UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
MARTIN B. SCHNABEL,

        Plaintiff,

- against -

JOHN M. SULLIVAN, ESQ. and
BURKE & SULLIVAN, P.C.,

        Defendants.
---------------------------------------X
JOHN M. SULLIVAN, ESQ. and
BURKE & SULLIVAN, P.C.,

        Third-Party Plaintiffs,

- against -

GLENN SCHNABEL,

        Third-Party Defendant.
---------------------------------------X

**MEMORANDUM & ORDER**

04-CV-5076 (RRM) (MLO)

MAUSKOPF, United States District Judge.

    Plaintiff Martin B. Schnabel sues his attorneys for personal losses allegedly caused by their failure to perform adequate due diligence and apprise him of contract modifications in connection with the purchase and operation of a restaurant business. Defendants now move for partial summary judgment, claiming that Plaintiff lacks standing to assert certain categories of damages which, if suffered, were suffered only by Plaintiff's corporate entity, not personally by Plaintiff. For the reasons below, Defendants' motion is DENIED.

### FACTUAL BACKGROUND

    The Court presumes the Parties' familiarity with the procedural history and factual background of this dispute. The following facts, however, are relevant to the instant motion and are set forth as follows.

In 2003, Schnabel, a New Jersey resident, sought to purchase and operate a restaurant known as The Farmhouse Restaurant, an establishment located in East Hampton, New York (alternatively, the "Restaurant"). In April of 2003, Schnabel formed "M at the Farmhouse, Inc." (the "Corporation"), a New York corporation, for purposes of owning and operating that Restaurant. At all times, Schnabel was and is the Corporation's sole shareholder. In April to early May 2003, Schnabel retained Defendant attorney John M. Sullivan and Sullivan's firm, Burke & Sullivan, P.C., to represent him in purchasing the Restaurant (the "Transaction"),[1] which Transaction was finalized on May 19, 2003. Schnabel claims that Sullivan and his firm failed to properly perform due diligence regarding the financial history of the Restaurant, and failed to apprise him of the existence of substantial liens on the property and the seller's overall misrepresentation of the Restaurant's financial condition, information that Schnabel claims would have led him to withdraw from the Transaction if timely brought to his attention. Schnabel alleges that because of his attorneys' malpractice, he incurred approximately $500,000 in losses.

Specifically, Schnabel alleges that Defendants negotiated material modifications to the Transaction documents, but failed to inform Schnabel of material changes, including an alleged modification requiring him to unconditionally deliver personal notes and guarantees immediately upon signing of those instruments, and not upon closing of the Transaction, as Schnabel claims was originally agreed. That modification, to which Schnabel says he never agreed and of which he was not timely informed, allegedly required him to personally undertake $585,000 in obligations before acquiring title.

---

[1] In opposing the prior motion to dismiss, Plaintiff claimed that he had retained Defendants' legal services and that the Corporation was not a party to that agreement. That Defendants did not contest this fact was expressly noted in Judge Platt's February 3, 2008 Order. Judge Platt also noted, however, that in this action for legal malpractice, neither party thought it appropriate to append the relevant retainer agreement to its submissions. (Memorandum & Order at 6, n.1.)

2

Schnabel further alleges that the Restaurant was not as the seller described, but instead suffered from substantial liens, including on essential inventory, receivables, and equipment. In addition, upon taking possession but prior to closing the Transaction, Schnabel discovered that the Restaurant was not generating income as described. Thus, Schnabel claims that it was necessary for him to pay $163,000 of his own money to cover operating costs and expenses, as well as an additional $47,000 from his personal accounts for necessary inventory.

After discovering the Restaurant's poor financial condition, Schnabel retained new counsel and refused to close on the purchase. In response, seller sued Schnabel personally for the $585,000 due on the personal guarantee and notes. Schnabel claims he had no choice but to settle the action for approximately $310,000, which he states is comprised of the following: (a) approximately $210,000 in cash; (b) the surrender of $47,000 in inventory paid for by Schnabel, and which he was otherwise personally entitled to recover upon termination of the Transaction; (c) the surrender of $55,000 in credit card revenue to which Schnabel claims he was also entitled; and (d) the release of any claim against the seller related to the approximately $163,000 Schnabel personally paid to cover the Restaurant's operating costs upon discovering its poor financial condition.

Schnabel contends that the Restaurant's poor financial condition should have been immediately apparent had Defendants performed their due diligence obligations. Thus, here too, Schnabel claims that he would have avoided his subsequent losses by terminating the Transaction had Defendants performed their obligations as Transaction counsel. Schnabel now brings this action to recover for the losses allegedly incurred in litigating and settling the claims against him (which include $50,000 in legal costs and fees), and the operating losses he absorbed with his own personal finances.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. Anderson, 477 U.S. at 248. In reviewing the record, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. Castle Rock Entm't Inc. v. Carol Publ'g Group, 150 F.3d 132, 137 (2d Cir. 1998). Furthermore, a court may not make credibility determinations or weigh the evidence in its review. See Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

### B. Standing

Pursuant to Federal Rule of Civil Procedure 19, Defendants previously moved our predecessor court (Platt, J.) to dismiss this action, claiming that Schanbel, as Plaintiff, failed to join the Corporation "M at the Farmhouse, Inc.," an allegedly indispensible party to this malpractice suit. Defendants argued that the Corporation was the actual party in interest, having directly suffered the bulk of economic damages alleged, and that its exclusion was merely a strategic move to preserve diversity jurisdiction. That motion was denied by Memorandum and Order dated February 3, 2006.

4

In its decision, the court determined that the Corporation was not an indispensible party in the context of a malpractice action, particularly in light of the fact that Defendants' retainer agreement for legal services was not with the Corporation, but exclusively with the Plaintiff. As such, the Corporation was a mere "stakeholder" in that arrangement. The court further determined that while "... the Corporation certainly may have an interest in the litigation ... and may be indirectly affected by any result of the litigation, disposition of the action in the absence of the Corporation would not impair the Corporation's ability to protect its interest in the litigation or subject Defendants potentially to double liability." (Order 6, 8.)

Now, in the summary judgment context, Defendants effectively renew their prior objections and seek to re-litigate this issue. To the extent that Defendants implore this Court to disregard Judge Platt's ruling, the Court declines to do so. That ruling comports with the relevant legal authority, constitutes the law of the case, and will not be disturbed. As a threshold matter, Schnabel has established a direct privity relationship with Defendant attorneys, which relationship is not disputed. As such, Schnabel has standing to bring a direct action for legal malpractice. See Lawrence Ins. Group, Inc. v. KPMG Peat Marwick L.L.P., 5 A.D.3d 918, 919 (3d Dep't 2004).[2]

While this Court agrees with the general principle that a sole or majority stockholder has no independent right of action to recover personally for wrongs to the corporation, that principal does not apply in this case. Here, the undisputed existence of an independent duty owed by

---

[2]   In Lawrence, plaintiff Lawrence Insurance Group, Inc. sued its accountants, KPMG, for professional malpractice that allegedly caused the liquidation of Lawrence's wholly-owned subsidiary, United Community Insurance Co ("UCIC"). Title to UCIC's property, as well as its contract receivables and rights of action were vested in the appointed liquidator. In defending suit, KPMG challenged Lawrence's standing, arguing that Lawrence could not use its shareholder status to offensively pierce the corporate veil and recover damages to its corporate subsidiary. Rejecting KPMG's arguments, the court cited the privity relationship between Lawrence and KPMG, which relationship contractually required KPMG to, among other things, assess and advise Lawrence on UCIC's financial health. The court thus held that Lawrence adequately established an actionable and independent duty owed by KPMG, and was not merely relying on its status as a UCIC shareholder. Lawrence, 5 A.D.3d at 919.

Defendants personally to Schnabel, as the individual who retained Defendants, distinguishes this case from the bulk of Defendants' supporting authority. Compare, e.g., Elenson v. Wax, 215 A.D.2d 429, relying on Abrams v. Donati, 66 N.Y.2d 951 (1985) (dismissing claim as derivative where no breach of independent duty was alleged); Pi, Inc. v. Ogle, No. 95 Civ. 1723, 1997 WL 37941, at *3 (S.D.N.Y. Jan. 30, 1997) (dismissing action where plaintiff failed to allege defendants' independent duty to him); Wolf v. Rand, 258 A.D.2d 401, 403 (1st Dep't 1999) (dismissing claims brought by virtue of shareholder status alone). As explained in Lawrence, supra, " where a defendant owes an independent duty to the shareholder and the shareholder and the defendant are in privity, the shareholder may sue for damages caused by the defendant's negligence which resulted in injury that is personal to the shareholder and independent of the damage caused to the corporation." Lawrence, 5 A.D.3d at 919, distinguishing Abrams v. Donati, supra, Wolf v. Rand, supra. To the extent that Defendants attempt to challenge Schnabel's threshold standing to sue his attorneys for malpractice, their arguments are without merit. As such, Defendants' request to dismiss this matter due to a lack of standing is DENIED.

### C. Personal Damages

Defendants are also correct that Schnabel's damages, if any, must be "personal." Compare Baccash v. Sayegh, 53 A.D.3d 636, 639 (2d Dep't 2008) (plaintiff's legal malpractice

6

claims for losses in business acquisition held not personal, but derivative).[3] Here, Plaintiff's allegations, viewed in the light most favorable to him, are sufficient to distinguish this case from Baccash. Unlike in Baccash, Schnabel issued approximately $585,000 worth of <u>personal</u> guarantees in connection with the purchase of the Restaurant. Indeed, not only were those personal guarantees issued, but Schnabel was sued directly in the seller's action to enforce them. In addition to Schnabel's claims of personal liability on those guarantees, he alleges substantial out-of-pocket expenses, including an approximately $163,000 injection of his own money to cover operating costs and keep the business afloat. Schnabel claims that not only were these his personal funds, but that, in settling the seller's lawsuit, he was forced to surrender his right to recover those funds in that action, due to the poor litigation posture in which he was placed by Defendants' alleged conduct. Settlement of the matter also allegedly included surrender of approximately $47,000 worth of inventory that Schnabel claims to have personally purchased for the benefit of the business. Finally, he claims to have personally expended approximately $50,000 in litigation costs surrounding the failed transaction.

In light of the above, Schnabel has adequately alleged personal damages caused by Defendants' alleged malpractice. Summary judgment is therefore inappropriate. See Lawrence, 5 A.D.3d at 919-20.

---

[3] In Baccash v. Sayegh, plaintiff, the sole officer and shareholder of Bridal Couture, Inc., failed to prove that she sustained actual, personal damages when her attorney's alleged misconduct caused her to unwittingly assume significant debt liabilities for Peggy Peters, Ltd., a competing business that plaintiff transacted to acquire. Baccash, 53 A.D.3d at 637-38. Although she claimed that her losses were personal, "the proof presented at trial revealed that all payments of Peggy Peters' debts after the February 2001 purchase [approximately $47,000] were made by Bridal Couture rather than [personally by] the plaintiff, and that Bridal Couture also paid $6,000 in settlement of a creditor's suit brought [only] against [the corporate entities] Bridal Couture and Peggy Peters." Id. at 566-67. Finding that all losses were thus paid exclusively from corporate coffers, the Appellate Division set aside the jury verdict, holding that plaintiff failed to establish that her damages were sufficiently personal. Although recognizing that plaintiff was Bridal Couture's sole officer and shareholder, the court declined to uphold plaintiff's award on an alter-ego basis, which would have required the court to disregard Bridal Couture's separate legal existence as a valid and going concern. Id. at 567 (recognizing that "... the courts are loath to disregard the corporate form for the benefit of those who have chosen that form to conduct business.") (internal citation omitted).

7

## CONCLUSION

For the reasons above, Defendants' motion for partial summary judgment dismissing certain of Plaintiff's damage claims is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2008

ROSLYNN R. MAUSKOPF
United States District Judge